Cases 19-4216 Mr. Giamatteo? Yes, Your Honor. Okay, you've got three minutes for rebuttal. You may proceed. Thank you. May it please the Court. John Giamatteo for Petitioner Giovanni Malets, who is with us in the courtroom today. Mr. Malets fled Ukraine in 2014 after being beaten for living his religious ideals. Unfortunately for Mr. Malets, however, he claimed sanctuary before an agency that was intent on removing procedural protections for asylum applicants. Rejecting two decades of precedent from this circuit, the Board held that applicants would no longer be provided actual notice or an opportunity to explain putative credibility concerns, so long as it was reasonable to assume an asylum applicant was aware of them. The agency's adverse credibility determination here is flawed at every level, but I'd like to start with the Board's erroneous reasonable-to-assume standard. Before you do that, can I have just a quick clarification? In your brief, you argue that the BIA did not adopt the factual findings of the IJ. And you cite page one of the opinion, which doesn't say that. So what's your basis for saying that the BIA did not adopt the IJ's determinations? No, sorry, Your Honor. I don't know that we say that. I think we say that they don't adopt the remaining other grounds. They did adopt the credibility determination. Okay, sorry. My bad. Sorry. No worries. So there's two errors, I think, in the legal determination. First, applicants need notice of the specific putative credibility concerns under this court's precedent and due process and an opportunity to explain those specific concerns. And that can happen through government cross-examination, right? Or is your argument it can't? That that doesn't cover it? So I think, as we've argued, the proper responsibility lies with the immigration judge to ensure that notice happens. Now, in a case where there is actually complete examination on cross, I think a due process violation might not lie, not because it wasn't, as a due process matter, the immigration judge's responsibility, but because if it truly is fully examined on cross, there won't be prejudice. And that's not what we have here. The government does not contest that notice requirement, that it's specific, that you need notice of the specific inconsistencies. And they don't contest the two inconsistencies that we've raised, that Mr. Millis was never given notice that the judge saw inconsistent, that his physical condition meant he couldn't have gone to Hungary to get the passport, and the second, that the alternative service would not have allowed him to show that he had been promoted on his paperwork. But the rest were specifically covered in government cross? Yes. As I believe so, the other grounds were covered in cross. But cross covered grounds that the agency were not necessarily considering as part of the credibility concern. So in immigration proceedings, they're often very harried. As you see from the transcript, the government's attorney's role is to just kick up dust and to try to throw, you know, often to throw the applicant off their game. Sometimes they're misrepresenting the record, maybe not deliberately, they're making mistakes. But it's very hard for that to ensure proper notice. And the error cost will just be, I think, too high if, as a default matter, we remove the responsibility from the immigration judge for ensuring that notice. And that's, I think, what the board is doing here. It's saying that immigration judges no longer need to take the clear line that this court has laid out, which is as long as it's not a dramatic inconsistency, immigration judges need to ensure notice occurs. And the board is saying that's no longer the case. It's adopting, you know, where this court has said notice is required, it's only a question of whether or not it's reasonable to assume that the applicant is aware of them. Right. But we do have authority that says that the IJ need not, quote, duplicate the questions of the government when the government has already noted testimonial flaws on cross-examination. Yes. In those cases, I read them as based on the substantial evidence standard. And they're cases where there is no notice. So like here where there's two inconsistencies that the board relied on that no notice was provided, there's no notice cases. The language that my opponent cites and the board cites is hypotheticals about what might be appropriate later on. Their due process wasn't raised, Matthews wasn't raised in those cases as far as I'm aware. So what you're asking us to do is return this case, I guess, through the BIA to the IJ or to the IJ to have him or her inform your client of these two inconsistencies on which they rely. Yes, Your Honor. And this is a precedential opinion from the board. So I think it would be helpful for this court to provide guidance to the board that the reasonable to assume standard is not appropriate if there is no notice provided. So I think this court could- Could you help me on something? Maybe the presider will not count this against you, but tell me, you refer to it as a precedential opinion. Now, when we say precedential opinion about our opinions, we think we know what we're talking about. But I'm not sure I know what you're talking about when you talk about the BIA. It's a precedential opinion. Somebody's going to have to tell me where on Westlaw I'm supposed to find it because I couldn't do that. How does that work? These are precedential opinions that the board- Normally, the board disposes of cases by single-member panels. Those have no binding effect beyond their walls or the four corners of the case. When the board issues a precedential opinion, it sits as a three-member panel that has binding effect on all immigration courts throughout the country, whether or not, you know, as to the rule of law. How do they know about these cases? Are they available somewhere? Yes, they're available on the Department of Justice website in various Department of Justice publications, including, like, there's indexes of them. And immigration judges generally cite to precedential opinions as controlling of their arguments. I take it the person who wrote this particular opinion was not a member of the- He was appointed for purposes of this case and not a member of the BIA? I believe that's right, Your Honor. He's a temporary member. Again, these are sort of delegated authorities from the Attorney General, and so I think the Attorney General has some wide leeway in how the board is appointed there. Fair enough. I'm just trying to, again, have some sense of what's going on beneath the surface, because I'm not familiar with- Yes, Your Honor. I believe I didn't say anything. Okay. I see my time is- Sorry if I took- No, that's okay. I do give you extra time in light of- Thank you. So, yeah, I think, you know, just turning quickly to the substantial evidence standard, the board and the immigration judge make multiple errors, as far as the three inconsistencies that, you know, setting aside the notice record and so- or the notice issues. So we don't have notice of two out of the three, which I think settles this case. And tell me what you think the two out of the three are. The two are the Hungary trip and that, you know, the specific credibility concern as to whether or not his health was, you know, sufficiently impaired that he couldn't have made that trip in the way that he said he did. Wasn't there also a question as to whether he could have been- achieved the rank that he achieved if, in fact, he was not billed? Yes. So that's the second notice. There's three concerns that the board has, that it relies on the Hungary trip, the alternative service, and the medical treatment. So on both the Hungary trip, it's the health condition. On the alternative service, they seem to suggest that he couldn't have, you know, shown a promotion in his documents and done the alternative service that he- And he wasn't given the opportunity to explain. Right. He wasn't given the opportunity to explain. He was crossed on his military service, wasn't he? But he wasn't asked whether or not he could- he was crossed on his military service, but not asked whether or not he could have been promoted or whether or not there was any information about whether or not he- But, you know, that's the specific concern that the immigration judge is concerned with, is he says, you know, his records show this, but he said he did not do military- arms training and that he worked in communication, did alternative service. That's the inconsistency concern that the immigration judge has, that he claims alternative service and then, you know, potentially served as a senior soldier at some point. That is never explored in the record and I think would have taken a minute or two of the immigration judge, who here is regularly sort of weighing in and cutting off testimony and raising the concerns that are on his mind, could have just simply asked about. As far as the medical treatment, which is the third ground, there might still be some inconsistency. I would note that I think there's sloppiness on the asylum application about- excuse me, on some of the other grounds. What I will say is I think, you know, as far as the medical treatment, even assuming there's a slight inconsistency between whether or not he was, you know, two months or five weeks for the treatment, that alone under Goering and Singh would not be enough to support this, you know, by substantial evidence, this finding. Judge Sack asked you if the notice ground held the day, how would we remand it, right? But your argument, I believe, is even if the notice ground isn't the issue, there isn't substantial evidence to support the inconsistencies. What does the remand look like in that case? In that case, I think this court clarifies that there is not grounds for, you know, the Hungary trip, which he affirmatively corrected, is not probative of his truthfulness. The board erred in noting that it wasn't raised on direct or in the applications, which in both cases it was. And it's just a simple application of Hong Fei Gao and Singh to say this is post-persecution omissions that, you know, we don't expect an applicant to rely on. And that analysis applies to the date of the first attack question, which was also raised kind of as a credibility issue, right? The date of the first attack question, I think the government doesn't rely on it or doesn't cite it because it's just completely wrong. I mean, he's very clear that there's three incidents. The first is at the 6th at the conscription office. The judge just conflates the 6th and the 9th. And, you know, again, I don't think the government relies on that. It's the same with the work history. The work history might be slightly inconsistent, although I think there, you know, it's disclosed in different places in the form of the application. It's clearly an attorney error. Government also doesn't rely on that. Can I ask counsel, I suppose, a flip of the question. If agreeing that not all areas were specifically covered on cross-examination, but some of the areas were specifically covered on cross-examination, if the areas that were specifically covered on cross-examination constitute substantial evidence to support a credibility determination, is your argument that you sort of don't engage in that analysis, it's a per se error that has to go back, or are we to take that view and then you make your arguments as to why that's not substantial evidence? I think this court should first address the notice issues and then see what inconsistencies are remaining after that. And then evaluate the remaining ones. But if you evaluate the remaining ones and conclude that those are enough for the IJ to have reached the conclusion he or she did, do we have to do anything further? Can we ignore these other two? Excuse me. Sorry, Your Honor. If you conclude that there isn't substantial evidence for those other ones? That there is. That there is. No, because I think two out of the three that the board relied on lack notice, so you have to address that ground. And then I believe that under this court's holding in Goring and in Singh, it's not enough for a simple inconsistency. It is sufficient for a simple inconsistency to support a substantial evidence finding. But the immigration judge is telling us what it took to conclude that, in total, the applicant is incredible. Here that took three grounds, the hungry trip, the alternative service, and the medical treatment for the agency to conclude that. Those are the three. Those are the only three. Those are the only three that I think are still alive. But the government doesn't contest those support and the board doesn't rely on them. Anyway, I think your precedents are clear that where two or three of the legs of the stool fall, the credibility determination can't stand. Chenery says you have to remand the agency to do it again, even if there might be some inconsistencies, because it's not one-to-one between the inconsistency and the adverse credibility finding as a legal determination. Okay. Thank you very much, counsel. We'll hear from Mr. O'Malley. And you do have three minutes remaining. May it please the court. My name is Andrew O'Malley. I represent the Attorney General of the United States. This court should deny the petition for review because the board's precedential decision articulates a reasonable reading of the credibility requirements premised on this court's precedent and which logically balances the relevant burdens of proof with the immigration judge's role in the adversarial process. I think there was a little bit of a miscasting of what the board held here, which is simply that an immigration judge does not have to individually raise an inconsistency to an applicant and a solicit explanation where that has been done already on cross-examination by the DHS, on redirect by petitioner's counsel, or even on direct. That is not the case with respect to two of the- Absolutely not, Your Honor. In fact, I think that sort of miscasts what the actual credibility concerns were. For example, with respect to the military service, it wasn't- Well, no, the contention is- Yes, I'm sorry. I'm sorry. I'm kind of going in the middle there, yes. You're right. With respect to the military service, the inconsistency is not whether or not the applicant could have been promoted to the rank of senior soldier if he was performing alternative military service. That wasn't it at all. It was that the document he submitted said that he was promoted to the rank of senior soldier. However, his testimony, when he was specifically asked about it, was that he was just a private. And there's a distinction there. Now, DHS counsel- Counsel, excuse me. Did he just say that, or didn't he say, for a while I did the work of a senior soldier, I just wasn't advised of the rank? That's his explanation when it was solicited. So he was confronted with the inconsistency. You said you were just a private. Your documentary evidence says you were a senior soldier. How does that work? And then he started going into the explanation of, well, I was performing the work for a little while, and then, well, it says you were a senior soldier. Well, I might have been conferred that rank, but I don't know about that. But his document says that he was promoted to the rank of senior soldier some seven months into his year-long service. And then he says, well, maybe I was conferred that rank at the end of my service. I just don't know about that. An immigration judge is not required to accept that explanation. That is the inconsistency. He was directly confronted with it, and he was afforded an opportunity to explain it. What about the Hungary trip? Because the IJ found he didn't put that on his application, and he did. Well, he did. He initially- I'm sorry. Okay, and the BIA found he didn't put it in his written statement, but the written statement was attached to the second application where he described the trip. So what's that about? So his original description of the trip to Hungary was that in October he fled Ukraine, went to Hungary, obtained his passport, and then left directly for the United States. And then he changed that date later on his second application, but still saying, I went to Hungary, obtained my passport, and then went to the United States without going back to Ukraine. He doesn't say anything about traveling to Ukraine in his written statement appended to his application. His claim then becomes, I went to Ukraine in August to obtain my passport. I went through some administrative proceedings in Hungary. I then went back to Ukraine for two months and then fled in October. That's the problem with his Hungary trip. That's what was- And was he confronted on that? He was, yes. It's a question of whether or not why it was omitted from his written statement. He's directly confronted. He's offered an opportunity to explain, and the IJ reasonably relied upon that. But you would agree that the IJ said it's not in his application, and it is, which is something that any reasonable adjudicator would find erroneous. Well, it's not in his written statement, and it's completely different in his written statement. That was the question I asked, right? The IJ stated, I find him incredible in part because he didn't mention it on his application, and he did. It's plainly there. You'd agree with me on that, right? But it's a totally different trip to Hungary. It's a completely different trip to obtain his passport. That's traveling to Hungary prior in October, and then leaving directly from there to go to the United States. It's not going to Hungary in August to obtain the passport. So you're not willing to concede that when the IJ said it's not mentioned at all in the application that that was erroneous? You're not willing to concede that? I'm not willing to concede that he says that the August trip wasn't mentioned. That's separate from the October trip. Right, but it's the omission of supplementary or additional information, not complete omission. I think that's fair, yeah. But it's a completely recasting of the actual claim that he does during his testimony that's not included in his written statement. But the written statement was attached to the 2018 application, which does mention the Hungary trip. Fair? But not at that time, and not in that context. I don't understand. Sure, the trip to Hungary is not – it's a difference between saying I went to Hungary in October, obtained my passport while I was there, and then left directly from there to the United States, versus I went to Hungary in August, came back to Ukraine with my passport, went through all these administrative proceedings in Hungary, had my picture taken, and then came back to Ukraine and left from there. But you'd agree with me that neither the IJ nor the BIA did that kind of analysis. They just said he didn't mention it. He didn't mention it in the written statement. He didn't mention it on the original application, and that's wrong. I didn't explain it as well as they should have. It's certainly within the facts there. I think it's, under the totality of the circumstances, it's included within the facts there. And it casts doubt on his claim because we went through, the government attorney went through asking questions about, well, did you apply for asylum when you were in Hungary? Could you have applied for asylum in Hungary? Because he went there and then came back. And the same is true for the IJ's interpretation of the, when was he first attacked? He says he never mentions August 6th, August 9th. He does, right? Petitioner's counsel is correct. We don't rely on that. The board didn't rely on that. We don't rely on it because the board didn't rely on it. The board looked at the immigration judge's decision, said these are enough to make the adverse credibility determination, and that's what the basis of the decision is. Is it your position, then, that the BIA adopted the findings of the IJ or did not adopt the findings of the IJ? The board found no clear error in the adverse credibility determination for the reasons specified in the board's decision. And that's how the administrative process works in board decisions, is they can look at this and say, this is enough. This was enough to uphold the adverse credibility determination under the clear error standard. Now, with regard to the medical treatment he received, that, again, he was directly confronted with the inconsistency there. His testimony that he was treated for two months directly conflicts with the doctor's note he submitted, the documentary evidence, in which it claims that he was treated from August until October 3rd. His testimony was then that I stopped receiving treatment on September 17th. He was confronted with that inconsistency on cross-examination. He was afforded an opportunity to explain. His testimony then changed into, well, I didn't want to go back because I was attacked again. I didn't want them asking me questions. I then received treatment at home from my home doctor. That's why it says October 3rd. I didn't receive the certificate until October 3rd. That's why it says October 3rd. The immigration judge is not required to accept that. That explanation, the inconsistency was there. It was raised, and his explanation was insufficient. Would you agree with me there, though, that the BIA said he never raised the issue of home treatment by the doctor before the IJ when, in fact, he did? I think that's a difference in terms of home treatment from the clinic versus home treatment from his home doctor. It was a bit of a confusing what happened, who were you treated by, and why did you receive this document in October or October 3rd as opposed to We're saying you received treatment until October 3rd from this clinic as opposed to until September 17th. Like I say, the board's decision here articulates a reasonable standard. It is wholly consistent with this court's precedent, particularly jute, in which the court said there's no reason to individually identify the inconsistencies if they've been raised by the immigration judge or if they've been raised on cross-examination. And that is inherent in the decision, as the decision points out multiple times. Does that answer the question, the principal question for us, is whether what the BIA said is consistent with the law of this circuit? Absolutely, Your Honor, and it is. It starts with Majidi, it goes through Ju, and then through the later decisions that post-date the Real ID Act where the court has said you had an opportunity or if you had an opportunity to explain on cross-examination by the DHS, that's sufficient for notice. And that's the immigration judge's obligation is to ensure a meaningful opportunity to explain the inconsistency which can come from DHS counsel, not simply the immigration judge. All right, thank you. Thank you very much. Appreciate it. And counsel, you have three minutes for rebuttal. Thank you, Your Honor. I just want to pick up on that last concession that I think the government concedes that actual notice is required as to the specific inconsistencies. And again, does not contest that two inconsistencies were not raised. They did contest that. I think they don't contest it as a matter of law. I think they read the board's decision differently. But again, if there's Take alternative service, the military service. We asked counsel that directly. And he said that he was confronted with precisely the inconsistency that was relied upon. No, I believe, and I don't want to quibble here, but I believe that he was presented with a concern about alternative service on cross. But what the immigration judge notes is, according to the respondent, he did not undergo weapons training and was never asked to use a weapon because his superiors were aware of his religious views. However, his military certificate demonstrates that he was promoted and ranked as a senior soldier. The inconsistency is that he could have been ranked in that way in his documentation once he was promoted. And that was never questioned. As far as the Hungary trip, this court's case law is very clear that there's not a requirement on applicants to provide every instance of post-prosecutory conduct in their written statement. And so to the extent that it is an omission and it's not clear that it is, it's clearly an error by the immigration judge. And when it was disclosed, it's usually not probative of truthfulness. I'm not sure how that could be probative of truthfulness when Mr. Moless is coming in and trying to affirmatively correct the record. The first thing he does in the hearing is try to correct that date that it wasn't in October, it was in August. Can you summarize for me how the BIA's presidential opinion here is inconsistent with the law of the circuit? First, because I think it requires no notice when there are non-obvious or dramatic inconsistencies. So this court in Mingxi Xue said that notice is required every time there's a non-obvious or dramatic. Dramatic in the sense that there is actually so inconsistent that the petitioner would have to be aware of them. You said you were beaten by two people and then you said it was five in a different way. So the board's holding explicitly applies in the world where Mingxi Xue says there has to be notice. And it says that the immigration judge does not need to ensure notice as long as it's reasonable to assume that the applicant was aware of them. And the protection that this court- Doesn't Xue Peng, which is 448F3-102, go a step further because it says that the IJ doesn't need to duplicate the questions of the government when the government has already noted testimonial flaws on cross-examination? It does say that the government's cross can't absolve the IJ of the responsibility to make the applicant aware that an explanation is necessary. But it expressly recognizes, and that's a 2006 presidential opinion, the possibility of notice being provided through the government's cross. Again, I think that's a no-notice case. The court is hypothesizing about what might be appropriate on remand. Like this case, I think it's perhaps simplest for this court to note that notice was not provided about two of the grounds and remand for further proceedings consistent with that. Because under our law, the law of this circuit was required. Yes, because it was required. And just to take a step back, the reason for this is because there are false inconsistencies. Immigration judges are hearing a lot of work. They're hearing three cases a day in different contexts. And what they think is reasonable to assume is an inconsistency may not be on further questioning. And that's why we require immigration judges to provide this sort of notice. And so if there's no further questions, I'd ask that this court reverse the board's presidential opinion, or vacate the board's presidential opinion, and remand the immigration judge for notice and to address the other flaws in the credibility determination. It's interesting. If it's sent back, should they just address the flaws, or is that all they do know about it? Should they go through the entire process? Well, I think it needs to go back to the immigration judge for notice and for further fact-finding, you know, for further testimony. I would note, obviously, that the immigration judge's alternative holding on changed circumstances looks very different today than it did at the time it was reached. And so I think we would need additional fact-finding as to the merits. In addition, should the immigration judge not find him adversely credible? Thank you. Thank you to both counsel for your briefs and argument.